***********
Upon review of the competent evidence of record with reference to the errors assigned, the Full Commission REVERSES the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award:
 ORDER
Item Number 14 under "Stipulations" in the Opinion and Award of the Deputy Commissioner is vacated as it was not a stipulation of the parties.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement admitted into evidence as Stipulated Exhibit 1:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the plaintiff-employee and defendant-employer at the relevant times.
3. The Travelers is the carrier at risk.
4. Plaintiff's average weekly wage was $1,013.39, yielding the maximum compensation rate of $620.00 per week.
5. A 25 September 2001 letter and the following Industrial Commission forms are admitted into evidence as Stipulated Exhibit 2: Forms 18 (Amended), 61, 33, 19, 18, 22 and 33R.
6. Plaintiff's medical records regarding this claim are admitted into evidence as Stipulated Exhibit 3.
7. Defendant's Answers to plaintiff's Discovery is admitted into evidence as Stipulated Exhibit 4.
8. Plaintiff's statement from 5 February 2001 is admitted into evidence as Stipulated Exhibit 5.
9. Christopher Karr's 1 March 2001 letter to plaintiff is admitted into evidence as Stipulated Exhibit 6.
10. Christopher Karr's typewritten notes are admitted into evidence as Stipulated Exhibit 7.
11. Blue Cross Blue Shield's policy exclusion rider is admitted into evidence as Stipulated Exhibit 8.
12. Accident investigation reports are admitted into evidence as Stipulated Exhibit 9.
13. Plaintiff's Answers to defendant's discovery are admitted into evidence as Stipulated Exhibit 10.
14. The issues to be determined are whether plaintiff sustained compensable injuries on 15 January 2001 and or 25 January 2001; and if so, what benefits, if any, would he be entitled.
 ***********
Based upon all of the competent evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of hearing before the deputy commissioner, plaintiff was 40 years old and had graduated from high school. Plaintiff's prior work history is primarily in the area of construction work. He has worked as a form carpenter, pipe fitter and millwright worker.
2. Plaintiff began working for defendant-employer on 1 December 1999. Plaintiff was assigned to work at various job sites in North Carolina and other states depending on where defendant-employer had work available.
3. On 15 January 2001, plaintiff was assigned to a job site in Hamlet, North Carolina. He reported to work, completed an initial safety orientation course and commenced his work duties. Beginning at approximately 1:00 p.m. and continuing to approximately 2:30 p.m., plaintiff lifted and carried, without assistance, 70 pound sheets of plywood that were approximately 30 feet long. From approximately 2:30 p.m. to 3:30 p.m., plaintiff worked with 300 pound timbers, again without assistance. Plaintiff's job was to move the 300 pound timbers with a forklift, but because he could not get the forks under the timbers, he had to manually lift each timber up on one end, place the end of the timber on the forks of his forklift and then go to the other end and lift the other end of the timber onto the forklift. Plaintiff lifted and otherwise handled these 300 pound timbers for 40-60 minutes. Approximately an hour after he stopped working, plaintiff began to experience severe low back pain going down his right leg.
4. On 15 January 2001, plaintiff spent the night with Roy and Boyd Putnam who are also employees of defendant-employer. Plaintiff testified that he told the Putnams he was experiencing low back pain. He further testified that his pain was so severe he had to either stand or lie down and that he laid on the floor for part of the night. Boyd Putnam testified that he did not know of any complaints of back pain made by the plaintiff and that plaintiff laid on the floor because there were only two beds and plaintiff had no other place to sleep. Plaintiff's testimony is accorded more weight and credibility than the contrary testimony of Boyd Putnam.
5. Plaintiff continued to work with low back pain and right leg pain after 15 January 2001. There is conflicting testimony regarding when plaintiff reported his injury to his employer; however, it is clear that by 24 January 2001 he reported to the new safety director, Kurt Friend, that he injured his back at work on the afternoon of 15 January 2001 while lifting and carrying sheets of plywood. Plaintiff also reported his injury to Trent McClellan, a safety supervisor, on or before 24 January 2001. Mr. McClellan did not complete the date plaintiff reported the injury to him on the Accident Investigation Report. Although plaintiff was mistaken about the exact reporting date, plaintiff reported his injury to Mr. Friend the first day Mr. Friend came to the job site, which was 24 January 2001. Plaintiff reported his back injury to his employer in a timely manner. Defendant-employer authorized plaintiff to obtain medical treatment with Dr. John Karl and Dr. Larry Stogner.
6. On the morning of 25 January 2001 prior to seeing the doctor, plaintiff was again required to lift and handle 300 pound green bridge timbers at work. While performing this work, plaintiff experienced an increase in his low back and right leg pain.
7. On 25 January 2001, plaintiff was treated by Dr. John Karl, a physician and his partner, Dr. Larry Stogner, a chiropractor, both practicing with FirstChoice Medical Group. Plaintiff's visit was at approximately 2:00 p.m. Plaintiff reported to Drs. Karl and Stogner that he had experienced an increase in his pain while lifting at work earlier that morning.
8. Plaintiff also reported to Dr. Karl and Dr. Stogner that he had been experiencing low back and right leg pain since lifting heavy timbers at work on 15 January 2001. Plaintiff reported that his pain level after 15 January was about 6 on a 10 point scale, ranging from low to high. Plaintiff further reported that lifting at work that morning (25 January 2001) made his pain more severe to the point that it was then 10 on a 10 point scale. Plaintiff was placed under the care of Drs. Karl and Stogner and given light duty work restrictions of no prolonged bending and no lifting over 20 pounds. Plaintiff's treatment consisted primarily of application of ice packs and manual manipulation therapy. Plaintiff was also given prescriptions for muscle spasms and pain relief. Plaintiff continued to perform light duty work for defendant-employer.
9. By 1 February 2001, Drs. Karl and Stogner noted that plaintiff had radicular symptoms down the posterior aspect of his right leg and buttocks and ordered an MRI. Plaintiff was taken out of work until the next day. By 6 February 2001, Drs. Karl and Stogner requested a consultation with Dr. Arthur, an orthopaedic surgeon, concerning plaintiff's low back pain. An MRI of plaintiff's lumbar spine was taken 7 February 2001 and was interpreted as showing disc degeneration, a small central protrusion at L4-5 and mild facet arthrosis at L4-5 and L5-S1. Drs. Karl and Stogner referred plaintiff to a back specialist. They also recommended that plaintiff remain out of work 7 February through 9 February 2001. Drs. Karl and Stogner arranged an appointment for plaintiff with Dr. Shupeck on 20 February 2001. Dr. Shupeck is a neurosurgeon who practices medicine in Pinehurst, N.C. Drs. Karl and Stogner changed plaintiff's work restrictions to lifting no greater than five pounds and no standing for more than 45 minutes without a break.
10. Defendants did not approve plaintiff's referral to Dr. Arthur or to Dr. Shupeck. On 6 March 2001, plaintiff sought treatment from Dr. Michael David Mitchell, an orthopaedic surgeon in Spartanburg, S.C., which is close to his home. Plaintiff gave Dr. Mitchell a history of having injured his back at work with defendant-employer on 15 January 2001 and that he also subsequently injured his back doing some clean up work lifting heavy timbers. Plaintiff further reported a previous injury to his back on 27 November 2000 while working for defendant-employer at a job site in Georgia. Plaintiff did not seek medical treatment or miss time from work as a result of the incident in Georgia.
11. On 6 March 2001, Dr. Mitchell examined plaintiff and the MRI film from the lumbar MRI taken 7 February 2001. Dr. Mitchell observed the L4-5 and L5-S1 facet arthrosis and slightly protruding disc, as interpreted by the radiologist; but, he also observed an annular tear at L4-5. Dr. Mitchell recommended an epidural steroid injection as well as physical therapy. He restricted plaintiff to light duty with no lifting over five pounds. Dr. Mitchell's office sought authorization for plaintiff's treatment through defendant-carrier, but was advised on 19 March 2001 that defendants were not accepting plaintiff's claim as compensable and that plaintiff should file for treatment under his private insurance. Plaintiff did not have private insurance that would cover his back injury.
12. Although defendants did not authorize either Dr. Arthur or Dr. Shupeck to treat or evaluate plaintiff, defendants did on 12 March 2001 send plaintiff to Dr. Glen Subin, also an orthopaedic surgeon in Pinehurst, N.C. Plaintiff drove back to North Carolina for this visit, a distance of 336 miles, roundtrip. Plaintiff told Dr. Subin of his lifting injury sustained at work on 15 January 2001. Plaintiff told Dr. Subin that chiropractic manipulations seemed to have worsened his back and that riding in a car for any length of time causes increased discomfort. In his report, Dr. Subin agreed with the recommendations for an epidural steroid injection and a course of physical therapy.
13. During January and February 2001 plaintiff continued to receive medical treatment but he also continued to work full time. On 7 March 2001 defendants conducted a regular, random drug test. The person chosen for testing was selected by a computer program. On 7 March 2001 plaintiff was randomly selected by the computer to take a drug test. He was upset about being selected and thought it was because he was suspected of calling in a bomb threat. Plaintiff had just recently taken the new employee drug test and a post-accident drug test. When requested on 7 March 2001 to take the random test, plaintiff refused. Defendant-employer terminated plaintiff's employment in accordance with company policy. Plaintiff's termination was not related to any alleged injury and he had worked full time up to that termination.
14. Plaintiff remained out of work from 7 March 2001 until he started work with Encompass on 14 October 2001. Plaintiff remained continuously employed from 14 October 2001 through the date of the close of record in this case.
15. Plaintiff's last visit with Dr. Mitchell was 18 September 2002, at which time plaintiff stated that he was continuing to work with stabbing back pains and that he was having bowel problems. Dr. Mitchell ordered a repeat MRI which was performed on 28 September 2002. This MRI showed mild degenerative disc disease at L4-5, a broad central disc protrusion causing impression upon the thecal sac, a disc protrusion at L5-S1 and an annular tear. Dr. Mitchell gave plaintiff work restrictions of no heavy lifting or working off the ground.
16. On 15 January 2001, plaintiff sustained an injury to his lumbar spine as a result of a specific traumatic incident of his assigned work duties of lifting and carrying 70 pound sheets of plywood and lifting and handling 300-pound timbers during a cognizable period of time. Plaintiff's testimony concerning his injury and how it occurred on 15 January 2001 is accepted as credible.
17. During the morning of 25 January 2001, plaintiff sustained an additional injury as a direct result of a specific traumatic incident of the work assigned by defendant-employer when he sustained increased pain in his lumbar spine while lifting heavy dunnage weighing in excess of 300 pounds during a cognizable period of time. Plaintiff's testimony concerning the second injury or the aggravation of his previous back injury on 25 January 2001 is found to be credible.
18. Greater weight is given to the medical opinions of Dr. Michael David Mitchell.
19. Plaintiff's work related injuries on 15 January and 25 January 2001 either caused or significantly aggravated his disk protrusions at L4-5 and L5-S1 and his annular tear
20. As a result of his compensable injuries, plaintiff has received the medical treatment described above from Dr. Karl, Dr. Stogner, Dr. Subin and Dr. Mitchell. Although plaintiff's medical treatment from Dr. Mitchell has been denied by defendants, the treatment provided was causally related to his compensable injures and was reasonably required to provide relief, effect a cure or lessen plaintiff's disability and should be approved. Plaintiff has not yet reached maximum medical improvement and needs continuing medical treatment with Dr. Mitchell, including an additional epidural injection, medication for relief of pain and consideration for physical therapy and an IDET procedure.
21. Plaintiff's failure to report to defendant-employer that he experienced an increase in pain due to lifting on 25 January 2001 is reasonable under the circumstances due to the closeness in time of the two injuries and the fact that the same area of the body was affected. Defendants were not prejudiced as plaintiff gave an accurate history of both injuries to the doctor defendants directed him to see and reference to both incidents is in the doctor's records.
22. Plaintiff's average weekly wage was $1,013.39, which yields a compensation rate of $620.00 weekly. Plaintiff is not seeking compensation for temporary total disability.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission finds as follows:
 CONCLUSIONS OF LAW
1. On 15 January 2001 and again on 25 January 2001, plaintiff sustained compensable injuries to his lumbar spine by accident arising out of and in the course of his employment with defendant-employer or as a direct result of specific traumatic incidents of the work assigned by defendant-employer. N.C. Gen. Stat. § 97-2(6). The 15 January 2001 injury was timely reported to defendant-employer. Regarding the 25 January 2001 injury, plaintiff timely advised the company doctors of the worsening of his condition from lifting. The lack of further or more formal notice of the 25 January 2001 injury is excused under the circumstances. Plaintiff had been authorized to receive medical treatment for his work-related injury sustained just ten days earlier to the same area of his lumbar spine. Moreover, defendants have demonstrated no prejudice from the absence of more formal notice of the 25 January 2001 aggravation or re-injury. N.C. Gen. Stat. § 97-22.
2. As a result of the compensable injuries to his lumbar spine, plaintiff has received medical treatment from several providers including Dr. Mitchell which has tended to effect a cure, give relief or lessen his disability. N.C. Gen. Stat. § 97-25. Plaintiff has not yet reached maximum medical improvement from his compensable lumbar injuries and his need of continuing medical treatment with Dr. Mitchell. Dr. Mitchell is approved as plaintiff's treating physician for past and future medical treatment.
3. Plaintiff's average weekly wage was $1,013.39, which yields a compensation rate of $620.00. Plaintiff is not seeking compensation for temporary total disability.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for medical compensation is granted.
2. Dr. Mitchell is approved as plaintiff's treating physician.
3. Defendants shall pay the bills for medical services rendered by or at the direction of Dr. Mitchell and for all other medical treatment related to his compensable injuries from the other medical providers once those bills are submitted and approved according to procedures adopted by the Commission.
4. Defendants shall pay the costs due this Commission.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER
BSB/md